CLOSED

# U.S. District Court
# Southern District of Florida (West Palm Beach)
# CRIMINAL DOCKET FOR CASE #: 9:19−mj−08127−BER−1
## *Internal Use Only*

| | |
|---|---|
| Case title: USA v. Stockett | Date Filed: 04/09/2019 |
| Other court case number: 19Cr246(MCA) District of New Jersey | Date Terminated: 04/09/2019 |

---

Assigned to: Magistrate Judge
Bruce E. Reinhart

**Defendant (1)**

| | | |
|---|---|---|
| **Lester Stockett**<br>*TERMINATED: 04/09/2019* | represented by | **Richard G. Ozelie**<br>750 South Dixie Hwy.<br>Boca Raton, FL 33432<br>561−299−3421<br>Fax: 561−395−9093<br>Email: ozelielaw@gmail.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Temporary* |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18:371 | |

---

**Plaintiff**

| | |
|---|---|
| **USA** | represented by |

**Jacob Foster**
U. S. Department of Justice
Bond Building, 8th Floor
1400 New York Avenue, N.W.
Washington, DC 20005
(202) 615−6521
Email: jacob.foster@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 04/09/2019 | 1 | 3 | Magistrate Removal of Indictment from the District of New Jersey Case number in the other District 19cr246 as to Lester Stockett (1). (tmn) (Entered: 04/09/2019) |
| 04/09/2019 | 2 | 21 | NOTICE OF TEMPORARY ATTORNEY APPEARANCE: Richard G. Ozelie appearing for Lester Stockett (tmn) (Entered: 04/09/2019) |
| 04/09/2019 | 3 | 22 | PAPERLESS Minute Order for proceedings held before Magistrate Judge Bruce E. Reinhart: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Lester Stockett held on 4/9/2019. Date of Arrest or Surrender: 4/9/2019. Defendant present with counsel. Defense counsel entered a temporary appearance. Defendant sworn. Defendant advised of charges, rights and maximum penalties. Defendant waived preliminary, removal/identity and detention hearing. The Court ordered the defendant removed. Total time in court: 9 minutes. Attorney Appearance(s): Jacob Foster, Richard G. Ozelie (Digital 10:50:02) Signed by Magistrate Judge Bruce E. Reinhart on 4/9/2019. (tmn) (Entered: 04/09/2019) |
| 04/09/2019 | 4 | 23 | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Lester Stockett (tmn) (Entered: 04/09/2019) |
| 04/09/2019 | 5 | 24 | COMMITMENT TO ANOTHER DISTRICT as to Lester Stockett. Defendant committed to the District of of New Jersey. Closing Case for Defendant. Signed by Magistrate Judge Bruce E. Reinhart on 4/9/2019. *See attached document for full details.* (tmn) (Entered: 04/09/2019) |

FILED

2018R00919/Foster

APR 05 2019
AT 8:30 4:20 PM
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| | : | |
| | : | Crim. No. 2:19-CR-246(MCA) |
| v. | : | CASE NO. 19-8127-BER |
| | : | |
| | : | |
| CREAGHAN HARRY, LESTER STOCKETT, and ELLIOT LOEWENSTERN | : | |

FILED BY TM D.C.
Apr 9, 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**INDICTMENT**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

1. At all times relevant to this Indictment:

**Individuals and Entities**

a. Defendant CREAGHAN HARRY was a United States citizen who resided in Highland Beach, Florida.

b. Defendant LESTER STOCKETT was a United States citizen who resided in the country of Colombia.

c. Defendant ELLIOT LOEWENSTERN was a United States citizen who resided in Boca Raton, Florida.

d. PCS CC, LLC ("Procall"), was a Delaware Corporation and a call center company that purported to do business throughout Latin America, including in Colombia.

e. Telehealth Doctor's Network, LLC (dba "Video Doctor USA") was a Delaware corporation and purported telemedicine company, doing business throughout the United States.

f. Telemed Health Group, LLC (dba "AffordADoc") (collectively, with Video Doctor USA, the "Video Doctor Network") was a Delaware corporation and purported telemedicine company, doing business throughout the United States.

g. STOCKETT and HARRY owned, controlled, and/or operated the following entities, which were used in the scheme:

| **Entity** | **Date of Incorporation** | **Incorporation Location** |
|---|---|---|
| Les Raphael, LLC | January 19, 2010 | State of Florida |
| NPC Consulting, LLC | October 10, 2011 | State of Florida |
| SCPL | January 15, 2014 | State of Wyoming |
| Best Dialer, LLC | August 20, 2014 | State of Wyoming |
| Video Doctor USA | September 22, 2014 | State of Delaware |
| Droneza Consulting Group | May 5, 2016 | Dominican Republic |
| Affordadoc | May 27, 2016 | State of Delaware |
| Procall | June 13, 2016 | State of Delaware |

**The Medicare Program**

h. The Medicare program was a federal health care program providing benefits to persons who were 65 years or older, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

i. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

j. Medicare was divided into four parts which helped cover specific services: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

k. Specifically, Medicare Part B covered medically necessary physician office services and outpatient care, including the ordering of durable medical equipment ("DME"), such as Off-The-Shelf ("OTS") ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively "braces"). OTS braces require minimal self-adjustment for appropriate use and do not require expertise in trimming, bending, molding, assembling, or customizing to fit to the individual.

l. CMS contracted with various companies to receive, adjudicate, process, and pay Part B claims, including claims for braces. CMS also contracted with the Program Safeguard Contractor, or ZPIC, which are contractors that investigate fraud, waste, and abuse. As part of an investigation, the Program Safeguard Contractor or ZPIC may conduct a

clinical review of medical records to ensure that payment is made only for services that meet all Medicare coverage and medical necessity requirements.

m. DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

n. If Medicare approved a provider's application, Medicare assigned the provider a Medicare Provider Identification Number ("PIN" or "provider number"). A health care provider who was assigned a Medicare PIN and provided services to beneficiaries was able to submit claims for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider. Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to a Medicare beneficiary. This payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

o. Under Medicare Part B, claims for DME were required to be reasonable and medically necessary for the treatment or diagnosis of the

patient's illness or injury. Medicare uses the term "ordering/referring" provider to identify the physician or nurse practitioner who ordered, referred, or certified an item or service reported in that claim. Individuals ordering or referring these services were required to have the appropriate training, qualifications, and licenses to provide such services. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, the name and identification number of the physician or other health care provider who had ordered the services, and the name and identification number of the DME provider that had provided the services. Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers.

p. To be reimbursed from Medicare for DME, the claim had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare. Medicare would not pay claims procured through kickbacks and bribes.

q. Medicare regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. Medicare requires complete and accurate patient medical records so that Medicare may verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

r. To receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

**Telemedicine**

2. Telemedicine provided a means of connecting patients to health care providers by using telecommunications technology, such as video or the telephone.

3. Telemedicine companies hired physicians and other health care providers to furnish telemedicine services to individuals. Telemedicine companies typically paid health care providers a fee to conduct consultations with patients. In order to generate revenue, telemedicine companies typically either billed the Medicare program or other health insurance program, or offered a membership program to customers.

4. Medicare Part B covered expenses for specified telehealth services if certain requirements were met. These requirements included (a) that the beneficiary was located in a rural area (outside a Metropolitan Statistical Area or in a rural health professional shortage area); (b) that the services were delivered via an interactive audio and video telecommunications system; and (c) that the beneficiary was at a practitioner's office or a specified type of medical facility – not at a beneficiary's home – during the telehealth service furnished by a remote practitioner.

5. Some telemedicine companies offer membership programs to patients who sign a contract for telemedicine services, paid a set dollar amount

per month, and paid a fee each time the customer has a telehealth encounter with a physician.

**COUNT ONE**
**(Conspiracy to Defraud the United States and Pay and Receive Kickbacks)**
**D-1 CREAGHAN HARRY**
**D-2 LESTER STOCKETT**
**D-3 ELLIOT LOEWENSTERN**

6. Paragraphs 1 through 5 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

7. From in or around 2015, and continuing through in or around the present, in the District of New Jersey, and elsewhere, the defendants,

CREAGHAN HARRY,
LESTER STOCKETT,
and
ELLIOT LOEWENSTERN

did intentionally and knowingly, combine, conspire, confederate, and agree with each other, and others known and unknown to the Grand Jury, to:

a. defraud the United States by cheating the United States government or any of its agencies out of money or property, or by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare; and

b. commit certain offenses against the United States, that is:

i. to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A)-(B), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the

furnishing of any item and service for which payment may be made in whole or in part by Medicare, and in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole or in part under a Federal health care program; and

ii. to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A)-(B), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare, and in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole or in part under a Federal health care program.

**Object of the Conspiracy**

8. It was the object of the conspiracy for defendants CREAGHAN HARRY, LESTER STOCKETT, ELLIOT LOEWENSTERN, and other co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds

from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

**Manner and Means of the Conspiracy**

9. The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

a. HARRY and STOCKETT created, owned, and/or controlled the Video Doctor Network.

b. HARRY and STOCKETT, through the Video Doctor Network, recruited and hired health care providers, in the District of New Jersey and elsewhere, to order braces for Medicare beneficiaries.

c. HARRY, STOCKETT, and LOEWENSTERN solicited and received illegal kickbacks and bribes from Person A and others in exchange for the ordering, arranging for, and recommending the ordering of braces for Medicare beneficiaries.

d. HARRY, STOCKETT, LOEWENSTERN caused the Video Doctor Network to receive Medicare beneficiary information in order for Video Doctor Network health care providers to sign brace orders.

e. HARRY, STOCKETT, and others facilitated ordering of braces by refraining from charging a fee to Medicare beneficiaries or billing Medicare for purported telemedicine consultations conducted by the Video Doctor Network health care providers.

f. HARRY, STOCKETT, and others, through the Video Doctor Network, paid health care providers to order braces for Medicare beneficiaries that were procured through the payment of kickbacks and bribes, medically

unnecessary, ineligible for Medicare reimbursement, and/or not provided as represented.

g. HARRY, STOCKETT, LOEWENSTERN, and others transferred brace orders to DME providers, Person A, recruiters, and others to support false and fraudulent claims to Medicare that were submitted by DME providers, located in the District of New Jersey and elsewhere.

h. HARRY, STOCKETT, LOEWENSTERN, and others facilitated and concealed the scheme by repeatedly making, or causing to be made, false and fraudulent representations to investors, lawyers, doctors, and others, including that beneficiaries enrolled in a membership program and paid AffordADoc for the telemedicine consultations; AffordADoc was "profitable" and "creating revenue of about $10 million per year, with 20% profit to the bottom line"; and that the Video Doctor Network, and its owners or investors, did not directly or indirectly receive money from DME providers or DME marketers.

i. HARRY, STOCKETT, and others concealed and disguised the payment and receipt of illegal kickbacks and bribes by causing them to be paid to the Video Doctor Network indirectly through nominee companies and bank accounts, opened by HARRY, STOCKETT, and others in nominee names both in the United States and in foreign countries, including the Dominican Republic. HARRY, STOCKETT, and others hid the existence of the foreign companies and bank accounts by making, or causing to be made, false statements to financial institutions and falsely reporting that they and others had no influence over foreign bank accounts.

j. HARRY, STOCKETT, and others also concealed and disguised the scheme by entering into sham contracts and agreements,

Case 1:19-cr-00246-ESK Document 6 Filed 04/09/19 Page 12 of 24 PageID: 3924

labeling payments as "marketing" or "business process outsourcing" expenditures, and creating and maintaining false and fraudulent invoices.

k. HARRY, STOCKETT, LOEWENSTERN, and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of DME orders and other records all to support claims for DME that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

l. HARRY, STOCKETT, LOEWENSTERN, and others caused the DME providers to submit, and cause the submission of, an amount in excess of approximately $424 million for DME orders that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented. Medicare paid these DME providers approximately in excess of $200 million for these claims.

**Overt Acts**

10. In furtherance of the conspiracy and in order to accomplish the objects thereof, Defendants HARRY, STOCKETT, LOEWENSTERN, and their co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

a. In or around March 2016, HARRY, STOCKETT, LOEWENSTERN, and others solicited and received an illegal kickback and bribe from Person A and others in the form of a wire to Video Doctor USA's bank account ending in x6514 in the approximate amount of $71,200.

b. In or around August 2016, HARRY, STOCKETT, LOEWENSTERN, and others solicited and received an illegal kickback and bribe from Person A

and others in the form of a wire to Latin American Call Centers' bank account ending in x5414 in the approximate amount of $120,595.

11. In or around May 2017, HARRY, STOCKETT, LOEWENSTERN, and others solicited and received an illegal kickback and bribe from Person A and others in the form of a wire to Procall's bank account ending in x5289 in the approximate amount of $149,080.

12. In or around March 2019, HARRY, STOCKETT, and LOEWENSTERN solicited from Person A, who was located in the District of New Jersey and elsewhere, and received an illegal kickback and bribe in the form of an international wire to Procall's bank account ending in x5289 in the approximate amount of $171,501.

(All in violation of Title 18, United States Code, Section 371.)

**COUNTS TWO THROUGH FIVE**
(Soliciting and Receiving of Health Care Kickbacks)
D-1 CREAGHAN HARRY
D-2 LESTER STOCKETT
D-3 ELLIOT LOEWENSTERN

13. Paragraphs 1 through 5, and 9 through 12, of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

14. On or about the dates set forth below, in the District of New Jersey, and elsewhere, the defendants,

CREAGHAN HARRY,
LESTER STOCKETT,
and
ELLIOT LOEWENSTERN

did knowingly and willfully solicit and receive remuneration (including kickbacks and bribes), directly and indirectly, overtly and covertly, in cash and

in kind, including by wire, as set forth below, in return for purchasing, leasing, ordering, and arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part by Medicare, as set forth below:

| Count | Date | Originating Account | Payee | Amount |
|---|---|---|---|---|
| 2 | March 7, 2016 | Company A | Video Doctor USA | $71,200 |
| 3 | August 31, 2016 | Company A | Latin American Call Centers | $120,595 |
| 4 | May 11, 2017 | Company A | Procall | $149,080 |
| 5 | March 6, 2019 | Company A | Procall | $171,501 |

(All in violation of 42 U.S.C. § 1320a-7b(b)(1)(B) and 18 U.S.C. § 2.)

**COUNT SIX**
(Conspiracy to Commit Money Laundering)
D-1 CREAGHAN HARRY
D-2 LESTER STOCKETT

15. Paragraphs 1 through 5, and 9 through 12 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

16. From in or around March 2016 through in or around the present, in the District of New Jersey, and elsewhere, the defendants,

CREAGHAN HARRY,
and
LESTER STOCKETT

did knowingly, combine, conspire, confederate, and agree with each other, and others known and unknown, to commit certain offenses against the United States in violation of Title 18, United States Code, Sections 1956, to wit:

a. to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved proceeds of specified unlawful activity, that is, a conspiracy to defraud the United States and pay and receive kickbacks relating to a health care benefit program, that is Medicare, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b. to transport, transmit and transfer and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A);

c. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, a conspiracy to defraud the United States and pay and receive kickbacks relating to a health care benefit program, that is Medicare, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the

nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

(All in violation of Title 18, United States Code, Section 1956(h).)

**FORFEITURE ALLEGATIONS**

(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; 18 U.S.C. §§982(a)(1) and (7) – Criminal Forfeiture)

17. The allegations contained in Counts 1-6 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against defendants,

CREAGHAN HARRY,
LESTER STOCKETT,
and
ELLIOT LOEWENSTERN

pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

18. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), together with Title 28, United States Code, Section 2461, upon being convicted of the crime charged in Count 1 of this Indictment, the convicted defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

19. Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 5 of this Indictment, the convicted defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

Case 9:19-mj-08121-BER Document 1 Entered on FLSD Docket 04/09/2019 Page 18 of 24

20. Pursuant to Title 18, United States Code, Section 982(a)(1), upon being convicted of the crime charged in Count 6 of this Superseding Indictment, the convicted defendants shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to such property.

## Substitute Assets Provision

21. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18 United States Code, Section 982(b), to seek forfeiture of any other property of defendants CREAGHAN HARRY, LESTER STOCKETT, and ELLIOT LOEWENSTERN up to the value of the forfeitable property described above.

CRAIG CARPENITO
United States Attorney

JOSEPH BEEMSTERBOER
Chief, Healthcare Fraud Unit
Criminal Division, Fraud Section

JACOB FOSTER
Acting Assistant Chief
Criminal Division, Fraud Section

CASE NUMBER: ____________________

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

**v.**

**CREAGHAN HARRY, LESTER STOCKETT, and ELLIOT LOEWENSTERN**

## INDICTMENT FOR

**18 U.S.C. §§ 371, 1956(h), and 2; 42 U.S.C. § 1320a-7b(b)(1)(B)**

**A True Bill,**

__________

**Foreperson**

CRAIG CARPENITO
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

JACOB FOSTER
ACTING ASSISTANT CHIEF
NEWARK, NEW JERSEY
202-615-6521

FILED BY TM D.C.
APR - 9 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-8127-BER

UNITED STATES OF AMERICA,
Plaintiff,

v.

Lester Stockett

Defendant.

/

**NOTICE OF TEMPORARY APPEARANCE AS COUNSEL**

COMES NOW Richard G. Orzlie and files this temporary appearance as counsel for the above named defendant(s) at initial appearance. This appearance is made with the **understanding** that the undersigned counsel will fulfill any **obligations imposed** by the Court such as **preparing and filing documents** necessary to collateralize any personal surety bond which may be set.

Counsel's Name (**Printed**): Richard G. Orzlie

Counsel's Signature: [signature]

Address (include City/State/Zip Code):
750 S. Dixie Hwy
Boca Raton, Fl 33432

Telephone: 561-299-3421 o
954-254-9725 c

Florida Bar Number: 266221

Date: 4/9/19

MIME−Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Jacob Foster (jacob.foster@usdoj.gov), Richard G. Ozelie (ozelielaw@gmail.com, rozelie@aol.com), Magistrate Judge Bruce E. Reinhart (reinhart@flsd.uscourts.gov)
--Non Case Participants: Federal Public Defender (fls_ecf@fd.org)
--No Notice Sent:

Message−Id:18678699@flsd.uscourts.gov
Subject:Activity in Case 9:19−mj−08127−BER USA v. Stockett Initial Appearance − Rule 5(c)(3)/Rule 40
Content−Type: text/html

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 4/9/2019 at 12:17 PM EDT and filed on 4/9/2019

| | |
|---|---|
| **Case Name:** | USA v. Stockett |
| **Case Number:** | 9:19−mj−08127−BER |
| **Filer:** | |
| **Document Number:** | 3(No document attached) |

**Docket Text:**
**PAPERLESS Minute Order for proceedings held before Magistrate Judge Bruce E. Reinhart: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Lester Stockett held on 4/9/2019. Date of Arrest or Surrender: 4/9/2019. Defendant present with counsel. Defense counsel entered a temporary appearance. Defendant sworn. Defendant advised of charges, rights and maximum penalties. Defendant waived preliminary, removal/identity and detention hearing. The Court ordered the defendant removed. Total time in court: 9 minutes. Attorney Appearance(s): Jacob Foster, Richard G. Ozelie (Digital 10:50:02) Signed by Magistrate Judge Bruce E. Reinhart on 4/9/2019. (tmn)**

**9:19−mj−08127−BER−1 Notice has been electronically mailed to:**

Jacob Foster     jacob.foster@usdoj.gov

Richard G. Ozelie     ozelielaw@gmail.com, rozelie@aol.com

**9:19−mj−08127−BER−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No: 19-8127-BER

FILED BY TM D.C.
APR - 9 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

United States of America
Plaintiff,
v.

Charging District's Case No. 19-CR-246(MCA)

LESTER STOCKETT,
Defendant.
_________________________________/

**WAIVER OF RULE 5 & 5.1 REMOVAL/IDENTITY HEARINGS**

I understand that I have been charged in another district, the **(District of New Jersey)**.

I have been informed of the charges and of my rights to:

(1) retain counsel or request the assignment of counsel if I am unable to retain counsel;
(2) an identity hearing to determine whether I am the person named in the charges;
(3) production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;
(4) a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;
(5) a hearing on any motion by the government for detention;
(6) request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my rights to: **(check those that apply)**

- [x] An identity hearing and production of the warrant.
- [x] A preliminary hearing.
- [x] A detention hearing in the Southern District of Florida.
- [x] An identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled to in this district. I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

_________________________
Defendant's Signature

Date: 4/9/2019

_________________________
Bruce E. Reinhart
UNITED STATES MAGISTRATE JUDGE

**United States District Court**
**Southern District of Florida**
Case No. 19-8127-BER

FILED BY ___ D.C.
APR - 9 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

UNITED STATES OF AMERICA,

v.

Charging District's Case No. 19-CR-246(MCA)

LESTER STOCKETT,

______________________________/

COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the District of New Jersey.

The defendant remains in custody after the initial appearance in the Southern District of Florida.

**IT IS ORDERED** that the United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant. The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled. The clerk of this district must promptly transmit the papers and any bail to the charging district.

**DONE AND ORDERED** at West Palm Beach, Florida on 4/9/2019.

Bruce E. Reinhart
UNITED STATES MAGISTRATE JUDGE

| RETURN | | |
|---|---|---|
| This commitment was received and executed as follows: | | |
| | | |
| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
| | | |
| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |
| | | |